COLORADO COURT OF APPEALS                                    **2017COA48**

Court of Appeals No. 13CA2318
City and County of Denver District Court No. 11CR3951
Honorable John W. Madden IV, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Hector Toby Sifuentes,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE NAVARRO
Taubman, J., concurs
Graham, J., dissents

Announced April 20, 2017

Cynthia H. Coffman, Attorney General, Patricia R. Van Horn, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, James S. Hardy, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Hector Toby Sifuentes, appeals the district court's order denying his petition for postconviction relief under Crim. P. 35(c).  Sifuentes claims that the court erred by concluding that he did not show prejudice from his counsel's erroneous advice about the immigration consequences of his guilty plea.  To address his claim, we identify factors pertinent to the prejudice analysis in this context.  Considering those factors, we agree with Sifuentes, reverse the order, and remand with directions.

## I.     Factual and Procedural History

### A.     Defendant's Background, the Criminal Charges, and the Ensuing Plea Agreement

¶ 2     Defendant was born in Mexico in 1970.  He moved to the United States when he was two years of age and became a lawful permanent resident in 1988.  He also has significant other ties to the United States, including four United States-citizen children, several siblings living lawfully in the country, and a disabled mother (also a lawful permanent resident) for whom he had been acting as caretaker while sharing a home in Denver.  He has committed several traffic offenses and misdemeanors but no felonies prior to the charges in this case.  None of his prior convictions involved

1

distribution of drugs. Defendant has been receiving medical treatment for sclerosis of the liver, kidney stones, and class one diabetes, which has rendered him insulin dependent. He has no ties — familial or otherwise — to Mexico.

¶ 3    In 2011, the prosecution charged defendant with distributing and conspiring to distribute a controlled substance, class three felonies. He allegedly sold the substance to a confidential informant in a transaction that was audio- and video-recorded by police. Defendant later pleaded guilty to an added count of distribution of a schedule III controlled substance as a class four felony, in exchange for dismissal of the original charges. The plea agreement did not include sentencing concessions.

¶ 4    After conducting a providency hearing and accepting the guilty plea, the trial court sentenced defendant to Community Corrections (Comcor) for five years. Comcor, however, rejected defendant when Immigration and Customs Enforcement (ICE) placed him on an immigration detainer following his conviction. The trial court therefore resentenced defendant to forty-two months in prison followed by three years of mandatory parole. Unbeknownst to defendant and defense counsel, the conviction triggered automatic

mandatory deportation (known as removal) under federal law, along with mandatory detention throughout the ensuing deportation proceedings. *See* 8 U.S.C. § 1226(c)(1)(B) (2012).

### B. Postconviction Proceedings

¶ 5 Defendant filed a Crim. P. 35(c) petition for postconviction relief seeking to withdraw his guilty plea on the ground of ineffective assistance of his plea counsel. Defendant claimed that his plea counsel failed to advise him of a clear and unavoidable immigration consequence flowing directly from his guilty plea — he would be deported automatically. Instead, his plea counsel advised him that, in light of his strong ties to this country, he might be able to remain here even after he pleaded guilty. Defendant maintained that, if he had been properly advised, he would have rejected the plea agreement and insisted on proceeding to trial.

¶ 6 The postconviction court held a two-day evidentiary hearing. Defendant's plea counsel testified that the risk of deportation played a central motivating role in defendant's plea deliberations. Defendant emphasized his concern over removal from the country the first time he spoke with plea counsel, and he repeated that concern every time thereafter. But the prosecution offered only a

guilty plea to distribution of a schedule III controlled substance, which carried a lower sentencing range than the original charges but did not avoid the risk of deportation altogether.

¶ 7     Thus, before the providency hearing, plea counsel advised defendant that a guilty plea to the reduced charge created a risk of deportation but deportation would not be automatic and he would still be eligible for a sentence to probation or Comcor.[1]  At the resentencing hearing, plea counsel continued to inform defendant that, even though he had been placed on an immigration detainer after his conviction, he still had a chance of staying in the United States based on his long residential history in the country and his complicated health issues.  As the postconviction court found, all of this advice was erroneous.

¶ 8     The postconviction court also heard testimony from defendant and his sister.  His sister testified that defendant's family resides in the United States and that he lacks any ties to Mexico.  She also explained that defendant's medical condition likely rendered a

---

[1] Based on plea counsel's testimony, the postconviction court found that, during plea negotiations, counsel had advised defendant that immigration authorities would consider his lawful permanent resident status, his length of time in this country, and his family and health concerns when deciding whether to deport him.

longer prison sentence in the United States preferable to faster deportation to Mexico, where his access to medical treatment would be uncertain. Defendant reiterated his misunderstanding of the immigration consequences arising from his guilty plea (i.e., he thought he would still have a chance to remain in this country). He explained that he probably would never see his ailing mother again if he were deported. He also confirmed his sister's concerns about his own medical treatment, and he told the court: "I'll probably die out there [in Mexico], because I have no one out there, absolutely nobody. Everybody I have is right here in this courtroom today."

¶ 9 Finally, an immigration attorney — whom defendant's plea counsel had consulted before his plea — testified at the postconviction hearing. The immigration attorney explained that defendant's plea counsel had consulted her about immigration issues generally, but she did not offer advice to plea counsel about defendant's specific situation. The immigration attorney also testified that defendant had retained her after his guilty plea and after ICE had placed him on an immigration detainer. Although she explained that defendant had retained her shortly before his resentencing hearing, she did not testify that she advised him of the

5

automatic deportation consequences of his conviction prior to the resentencing hearing. And the immigration attorney did not represent him at the resentencing hearing.

¶ 10 The postconviction court denied the petition in a written order. The court first agreed with defendant that his plea counsel had failed to properly advise him of the automatic immigration consequences of his plea: "[I]t is clear that the plea was to an aggravated felony which made the Defendant automatically deportable. Further, the plea to an aggravated felony meant that factors such as the Defendant's time living in this country, his health or his family situation would not protect him from deportation." Therefore, the court concluded that plea counsel's advice "constituted deficient representation."

¶ 11 According to the court, however, defendant did not suffer prejudice because "[d]ue to audio and video recordings [of the offense] there was no rational basis to believe that [he] would not be convicted at trial." As a result, the court held that, even if defendant had known of the correct immigration consequences of the guilty plea, it would not have been rational for him to reject the plea offer.

¶ 12    The postconviction court further concluded that, even if defendant had established prejudice from his counsel's advice, he was "not entitled to relief due to the circumstances of his providency hearing."  Specifically, he had signed a written Crim. P. 11 advisement indicating, among many other points, that his guilty plea would result in deportation.  And, during the colloquy with the plea court at the providency hearing, defendant indicated generally that he understood the terms of the written advisement and asked no questions.

## II.    Ineffective Assistance of Counsel

¶ 13    Defendant contends that the district court erred in determining that his plea counsel's deficient performance did not prejudice him.  We agree.

### A.    General Law and Standard of Review

¶ 14    Criminal defendants have a right to counsel, *see* U.S. Const. amends. VI, XIV; *see also* Colo. Const. art. II, § 16, and "the right to counsel is the right to the effective assistance of counsel," *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  This right extends to plea bargaining.  *People v. Corson*, 2016 CO 33, ¶ 32 (citing *Lafler v. Cooper*, 566 U.S. __, 132 S. Ct. 1376, 1384 (2012)).

7

¶ 15    Ineffective assistance of counsel during plea bargaining may constitute an adequate ground for postconviction relief under Crim. P. 35(c).  *See People v. Hunt,* 2016 COA 93, ¶ 12.  To prevail on such a claim, a defendant must establish that (1) counsel's performance fell below the level of reasonably competent assistance demanded of attorneys in criminal cases, and (2) the deficient performance prejudiced the defendant.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *accord Dunlap v. People,* 173 P.3d 1054, 1062-63 (Colo. 2007).

¶ 16    A conclusion on either *Strickland* prong presents a mixed question of law and fact.  *Carmichael v. People,* 206 P.3d 800, 807 (Colo. 2009).  While we review a district court's factual findings with deference, we review the application of law to those findings de novo.  *Id.* at 808.  That is, we independently review the ultimate determinations on *Strickland*'s performance and prejudice prongs.  *People v. Brown,* 250 P.3d 679, 681 (Colo. App. 2010); *see also People v. Newmiller,* 2014 COA 84, ¶ 18.

## B. Analysis

### 1. Deficient Performance

¶ 17    Although neither party challenges the postconviction court's conclusion that defendant satisfied the first *Strickland* prong, we explain that the law and the record support the court's decision.

¶ 18    The offense to which defendant pleaded guilty qualified as an "aggravated felony" under federal immigration law. *See* 8 U.S.C. § 1101(a)(43)(B) (2012) ("The term 'aggravated felony' [includes] illicit trafficking in a controlled substance."). As such, the conviction not only subjected defendant to mandatory deportation (preceded by an immigration detainer) but also precluded the opportunity for him to defend against his removal through an immigration proceeding. *See* 8 U.S.C. § 1229b(a)(3) (2012). A lawful permanent resident may ordinarily offer a defense to deportation through a proceeding known as "cancellation of removal." *Id.* This proceeding, however, is not available where the defendant is convicted, as here, of an "aggravated felony." *Id.*

¶ 19    Yet plea counsel advised defendant that remaining in this country would still be possible even after his guilty plea. Because counsel's advice ran counter to succinct, clear, and explicit

9

requirements of immigration law, counsel's advice was deficient. *See Padilla v. Kentucky*, 559 U.S. 356, 368-69 (2010); *see also United States v. Rodriguez-Vega*, 797 F.3d 781, 785-88 (9th Cir. 2015) (holding that, where deportation is virtually certain as a consequence of the guilty plea, advising the defendant of the mere potential for deportation is deficient performance); *Hernandez v. United States*, 778 F.3d 1230, 1233-34 (11th Cir. 2015) (same). We move, therefore, to the second *Strickland* prong — prejudice from the deficient performance.

## 2.    Prejudice

¶ 20    In the context of a guilty plea, the prejudice prong requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Corson*, ¶ 34. "Reasonable probability" means a probability sufficient to undermine confidence in the outcome and is a standard "somewhat lower" than a preponderance of the evidence. *Strickland*, 466 U.S. at 694; *see also Carmichael*, 206 P.3d at 806-07. The standard presents an objective inquiry that asks not whether the defendant likely would have been acquitted at

trial but whether counsel's conduct affected the outcome of the plea process. *Corson*, ¶ 35; *People v. Pozo*, 746 P.2d 523, 529 n.8 (Colo. 1987). Some objective evidence must corroborate the defendant's testimony that he would have made a different decision about the plea if he had been properly advised. *Carmichael*, 206 P.3d at 807. In the end, the defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.

¶ 21 Various factors should inform a court's analysis of whether a decision to reject the guilty plea would have been rational. First, a court should consider the strength of the prosecution's case. *See, e.g., People v. Morones-Quinonez*, 2015 COA 161, ¶ 13; *State v. Tejeiro*, 345 P.3d 1074, 1083 (N.M. Ct. App. 2014). Second, the attractiveness of the plea deal and the risks of going to trial should be analyzed. *See Carmichael*, 206 P.3d at 806 (recognizing that the comparative sentencing exposure between standing trial and accepting a plea offer may be important to the decision whether to plead guilty).

¶ 22 Third — in the case of a noncitizen defendant who wishes to remain in the United States — a court must take into account the

11

defendant's ties to this country as judged against the defendant's ties to another country. *See Morones-Quinonez*, ¶ 13; *People v. Kazadi*, 284 P.3d 70, 74 (Colo. App. 2011), *aff'd*, 2012 CO 73; *see also Lee v. United States*, 825 F.3d 311, 316 (6th Cir.), *cert. granted* 580 U.S. __, 137 S. Ct. 614 (2016); *DeBartolo v. United States*, 790 F.3d 775, 779-80 (7th Cir. 2015); *United States v. Orocio*, 645 F.3d 630, 644-45 (3d Cir. 2011), *abrogated on other grounds by Chaidez v. United States*, 568 U.S. ___, 133 S. Ct. 1103 (2013); *Sasonov v. United States*, 575 F. Supp. 2d 626, 636-38 (D. N.J. 2008); *Sial v. State*, 862 N.E.2d 702, 706 (Ind. Ct. App. 2012); *Padilla v. Commonwealth*, 381 S.W.3d 322, 329-30 (Ky. Ct. App. 2013); *People v. Picca*, 947 N.Y.S.2d 120, 129-31 (N.Y. App. Div. 2012); *State v. Sandoval*, 249 P.3d 1015, 1021-22 (Wash. 2011); *cf. Padilla*, 559 U.S. at 368 (recognizing that preserving a noncitizen's right to remain in this country may be more important than any potential jail sentence).

### a.    The Postconviction Court's Reasoning

¶ 23    We address initially the postconviction court's view that defendant was not entitled to relief "even if [he] had established both prongs of the *Strickland* test" because he was properly advised

by the written Rule 11 advisement. We disagree because, where a defendant meets the two-prong test set forth in *Strickland*, the defendant succeeds on a claim of ineffective assistance of counsel and must be allowed to withdraw his plea. *See, e.g., Carmichael,* 206 P.3d at 807; *Pozo,* 746 P.2d at 527 n.5.

¶ 24 The postconviction court believed that *People v. DiGuglielmo,* 33 P.3d 1248 (Colo. App. 2001), dictates a different result. But the *DiGuglielmo* division recognized that *Strickland* governed the defendant's claim that his plea counsel had provided ineffective assistance by advising him that he would receive a deferred judgment (he was later sentenced to probation instead). *Id.* at 1251. The division concluded that "because both the written Crim. P. 11 advisement form and the trial court at the providency hearing specifically addressed the issue of a deferred judgment," and the defendant did not ask clarifying questions, he could not succeed on his ineffective assistance claim. *Id.*

¶ 25 As we understand the case, the *DiGuglielmo* division decided that the defendant could not show prejudice from his counsel's advice because the plea court had correctly advised him of the specific plea consequence that his counsel had allegedly failed to

13

mention. *See also United States v. Kayode*, 777 F.3d 719, 728-29 (5th Cir. 2014) (recognizing that, while judicial admonishments during a plea colloquy have no bearing on the first *Strickland* prong, they may be relevant under the second prong to assess prejudice). In other words, the defendant could not show prejudice because he actually knew of the true consequences of his plea.

¶ 26    Those are not the facts of this case. Although the written Rule 11 advisement mentioned deportation as a consequence of the guilty plea, the plea court did not. (Nor did the court recognize on the record that defendant was not a citizen.) Indeed, the *DiGuglielmo* division distinguished its decision from another case on that very basis. *See* 33 P.3d at 1252 ("*Rael* is distinguishable because there is no indication in that opinion whether the trial court had advised the defendant there about the issue that was the focus of his claim of misrepresentation."). Furthermore, the supreme court's subsequent *Carmichael* decision illustrates that "a proper advisement by the district court does not preclude, as a matter of law, a finding of prejudice based on counsel's specific, erroneous advice." *Morones-Quinonez,* ¶ 21 (discussing *Carmichael,* 206 P.3d at 807-09). This principle is "particularly apt in the

14

immigration context, where a general advisement about the possibility of adverse immigration consequences may not be sufficient to dispel a specific promise or misrepresentation by counsel." *Id.* at ¶ 22; *State v. Favela*, 311 P.3d 1213, 1222 (N.M. Ct. App. 2013) (recognizing that even a court's unequivocal warning may be insufficient to cure prejudice from counsel's deficient performance because that warning alone does not ensure that the defendant received effective assistance in evaluating such an advisement). And defendant here "does not contend that []he had questions or concerns, or that []he was confused at the providency hearing, based on irreconcilable advisements from [his] counsel and the court, which is the situation addressed in *DiGuglielmo*." *Morones-Quinonez*, ¶ 24. Instead, he contends that he relied on his counsel's specific, erroneous advice when he pleaded guilty. *Id.*

¶ 27 Finally, unlike in *DiGuglielmo*, the premise of the postconviction court's analysis here was that defendant did *not* know of the automatic deportation consequence of his plea,

15

regardless of the written advisement.[2]  Hence, the postconviction court focused on what he would have done *if* he had known.

¶ 28    The postconviction court also cited *People v. Chavez*, 7 P.3d 1047 (Colo. App. 1999), to support its view that defendant could not obtain relief even if he satisfied both prongs of *Strickland*.  Because *Chavez* does not concern an ineffective assistance of counsel claim, however, it sheds no light here.  Consistent with our conclusion that *Chavez* and *DiGuglielmo* are inapposite, the People do not rely on those cases (or the written Rule 11 advisement) on appeal.

---

[2] The dissent takes a different view, concluding that defendant actually knew of the true consequences of his plea.  The dissent cites defendant's prior criminal acts.  Because those prior acts did not result in immigration consequences, however, they could not have made him aware of the immigration consequence of the guilty plea here.  On the contrary, those earlier experiences gave him reason to believe his plea counsel's erroneous advice that his new conviction would not guarantee deportation either.  Further, while defendant retained an immigration attorney after his plea and before his resentencing, neither that attorney nor defendant testified that she had advised him of the automatic deportation consequence of his plea before the resentencing hearing.  And the record shows that both his plea counsel and the sentencing court (on whom defendant could be expected to rely) seemed to believe that avoiding deportation was still possible.  It is not surprising, therefore, that he did not move to withdraw his plea before or at the resentencing hearing.  Regardless, the relevant question is what defendant knew at the time of his plea, not at the resentencing hearing.

¶ 29    We turn therefore to the postconviction court's discussion of what defendant would have done if he had known of the automatic deportation consequence of his guilty plea.  Defendant claimed that he would have rejected the plea deal and gone to trial if he had been properly advised.  The postconviction court deemed his contention "not to be credible."  Although framed as a credibility finding, the court's conclusion mirrors the ultimate determination of whether defendant showed *Strickland* prejudice in the guilty-plea context.  As explained, such a determination is a legal conclusion that we review de novo.  *See Carmichael*, 206 P.3d at 807; *Brown*, 250 P.3d at 681; *see also Chhabra v. United States*, 720 F.3d 395, 406 (2d Cir. 2013) ("The district court's findings as to basic, primary, or historical fact are subject to the clearly erroneous standard of review; the court's ultimate rulings as to *Strickland*'s components, and its ultimate decision as to whether counsel's performance violated the defendant's Sixth Amendment rights, are reviewed de novo.") (citations omitted).

¶ 30    Of course, where a district court's prejudice determination depends heavily on the court's credibility findings or its resolution of factual disputes, we would give the court's findings substantial

17

deference. Here, however, the postconviction court did not base its denial of defendant's claim on conflicting testimony, defendant's demeanor, a reputation for mendacity, or any other traditional credibility factor. On the contrary, the court credited defendant's testimony as to the historical facts — e.g., what he told his plea counsel (he wanted to avoid deportation if possible) and what counsel told him (deportation was not automatic under the plea deal). In denying defendant's prejudice claim nonetheless, the court relied entirely on its view that rejecting the plea would not have been rational even accepting defendant's account of the facts. Because this conclusion is intertwined with the ultimate question of prejudice, we naturally review it de novo.

¶ 31 The postconviction court concluded that defendant's rejecting the plea agreement and going to trial would not have been a rational decision because acquittal at trial was very unlikely given the recordings of the alleged drug transaction, his failure to identify a viable defense, and the prosecution's refusal to offer an immigrant-friendly plea deal. The court thus assumed that defendant would be convicted and deported in any event and, therefore, he faced only a decision between two to eight years in

prison (under the plea deal) and four to sixteen years in prison (if convicted at trial).[3]

¶ 32    The postconviction court weighed some of the factors relevant to the prejudice inquiry.  But the court's analysis did not go far enough.

¶ 33    Neither the strength of the prosecution's case nor the difference in the sentencing ranges between the plea deal and a conviction at trial are necessarily dispositive when a defendant faces immigration consequences.  *Morones-Quinonez,* ¶ 13; *see Orocio,* 645 F.3d at 643 (noting that likely acquittal at trial is not the "*sine qua non* of prejudice").  As explained, a court must consider all relevant factors — especially the defendant's ties to the United States and the resulting severity of deportation — before reaching a conclusion about prejudice.  *See Morones-Quinonez,* ¶ 13; *see also Lee,* 825 F.3d at 316 ("[A] claimant's ties to the United States should be taken into account in evaluating, *alongside the legal merits,* whether counsel's bad advice caused prejudice."); *Gonzalez v. United States,* 722 F.3d 118, 132 (2d Cir. 2013) ("[T]he

---

[3] The record does not reveal, however, whether defendant was advised of the sentences he faced if convicted of the original charges at trial.

19

court should, before reaching a conclusion as to prejudice, take into account all relevant factors."). Although "the strength of the State's case may be considered as part of a larger analysis of prejudice," the postconviction court's "almost exclusive reliance on the strength of the State's case and the benefits of the plea was improper[.]" *Tejeiro*, 345 P.3d at 1083.

¶ 34    We thus discern error in the postconviction court's legal analysis, and we now consider defendant's claim in light of all relevant factors.

### b.    Balancing All Relevant Factors

¶ 35    We first take heed of the Colorado Supreme Court's recognition that "when an alien defendant enters a guilty plea based on erroneous representations as to deportation consequences, he or she will in most cases be permitted to withdraw the plea." *Pozo*, 746 P.2d at 527 n.5. We also recognize that, in compliance with *Carmichael*, defendant here presented some objective corroborating evidence of his prejudice claim (e.g., his plea counsel's testimony confirming defendant's concerns about deportation and her erroneous advice about deportation). *See* 206 P.3d at 807; *see also Hernandez*, 778 F.3d at 1233-34 (recognizing that plea counsel's

20

statement corroborated defendant's allegations of ineffective assistance).

¶ 36     Next, we agree with the postconviction court that the prosecution's case against defendant appeared to be strong. How strong, however, is not clear. The confidential informant who allegedly bought the drugs from defendant did not testify at the postconviction hearing. Nor did any other prosecution witness testify. Although the record indicates that audio and video recordings of the alleged sale exist, neither recording was admitted into evidence or described in detail through the testimony at the postconviction hearing.[4] Hence, the admitted evidence does not reveal precisely how incriminating (or ambiguous) the recordings may be. Other documents in the record briefly describe the recordings, but they were not admitted into evidence at the hearing either. Even if we may consider such documents, they suggest that,

---

[4] Defendant's plea counsel testified that, according to her memory, the recordings captured the incident and persuaded her that this case would be difficult to defend. She did not, however, provide any details of what the recordings depicted. And, although defendant initially agreed with the postconviction court's statement that the recordings showed him committing the crime, he later clarified that his belief was based solely on what others had told him about the recordings. He had never seen them. Beyond this brief exchange, he did not admit his guilt.

while the audio recording contains some statements implicating defendant, the video recording does not actually depict a drug sale.

¶ 37    Because we recognize, however, that the prosecution did not bear the burden of proof at the hearing, we accept for our analysis that the prosecution's case was formidable. But we cannot conclude on this record that a conviction would have been "the sure thing that the government claims." *DeBartolo*, 790 F.3d at 779.[5] Moreover, while the apparent existence of a likely trial defense may strengthen a defendant's prejudice showing, establishing such a defense is not absolutely required in cases involving counsel's failure to accurately advise the defendant of the immigration consequences of a guilty plea. *People v. Deltoro*, 31 N.E.3d 389, 394 (Ill. App. Ct. 2015); *see Zemene v. Clarke*, 768 S.E.2d 684, 691 (Va. 2015) (holding that, in advancing a claim of prejudice due to defense counsel's failure to advise of the immigration consequences

---

[5] Defendant's plea counsel admitted that she did little to investigate possible defenses at trial. She did not, for instance, seek to learn the identity of the confidential informant. *Cf. People v. McKeel*, 246 P.3d 638, 642 (Colo. 2010) (recognizing that work as a confidential informant and prior drug use are among the "potentially unsavory details" about a witness that a jury may be entitled to hear). These circumstances further complicate the analysis of the strength of the prosecution's case.

22

when entering a plea agreement, the defendant "need not demonstrate a likelihood of acquittal at trial"). In sum, the strength of the evidence against defendant is not as probative of rationality as it would be in a nonimmigration case. *Morones-Quinonez*, ¶ 15.

¶ 38 Turning to the attractiveness of the plea deal, we first observe that the deal did not give defendant what he repeatedly said he wanted — a chance to stay in this country. Instead, the guilty plea guaranteed his automatic deportation. Thus, although the evidence against defendant was compelling, "[t]he threat of removal provide[d] [a] powerful incentive to go to trial [where] a plea would result in removal anyway." *Id.* at ¶ 13 (quoting *Orocio*, 645 F.3d at 645); *see Keserovic v. State*, 345 P.3d 1024, 1030 (Idaho Ct. App. 2015) (Given the defendant's "asserted desire to avoid deportation" and the virtual certainty of deportation if he pleaded guilty, "it may well have been in [his] better interests to take his chances at trial" even "accepting as true the State's assertion that the evidence of [his] guilt was overwhelming."); *see also Sasonov*, 575 F. Supp. 2d at 637; *United States v. Purpura*, No. 1:CR-94-171-01, 2012 WL 716149, at *2-3 (M.D. Pa. Mar. 5, 2012) (unpublished opinion);

*Padilla*, 381 S.W.3d at 329; *Picca*, 947 N.Y.S.2d at 130-31; *Sandoval*, 249 P.3d at 1022.

¶ 39    Moreover, the downside of going to trial was not immense, which is to say that the upside of the plea deal was hardly irresistible even assuming defendant probably would have been convicted at trial.  True, the plea deal offered a more favorable sentencing range, two to eight years in prison versus four to sixteen years if he were convicted at trial.  But this difference is modest when compared to the large disparities analyzed in other cases.  *See, e.g., Orocio*, 645 F.3d at 634 (comparing a plea deal offering credit for time served and two years of supervised release with a trial conviction carrying a minimum ten-year prison sentence); *Sandoval*, 249 P.3d at 1021-22 (considering a plea deal of 6 to 12 months as opposed to a trial conviction carrying a minimum sentence of 6½ to 8½ years and a maximum of life in prison); *cf. Carmichael*, 206 P.3d at 807 (considering the "large disparity between the sentence exposure as represented to Carmichael by [defense counsel] and the actual exposure Carmichael faced by going to trial").

¶ 40    In addition, mitigating factors (such as the absence of prior felonies and his serious health problems) could lead defendant to reasonably believe that a sentence at the higher end of the sentencing range and consecutive sentences were not likely if he went to trial.  (Recall that defendant originally received a Comcor sentence and then a lower-range prison sentence after he pleaded guilty.)  In fact, the postconviction court — which had also been the sentencing court — never mentioned consecutive sentences as a realistic possibility at trial, nor did the prosecutor.  Because consecutive sentences were not mandatory, and because the sentencing ranges overlapped, defendant could possibly have received the same sentence after conviction at trial as he would have received after pleading guilty.

¶ 41    In any event, preserving the right to stay in the United States "may be more important to the [defendant] than any potential jail sentence." *Padilla*, 559 U.S. at 368.  This is especially true where, as here, the defendant is a lawful permanent resident facing permanent banishment from a country he has lived in since he was a toddler.  *See Orocio*, 645 F.3d at 645 ("[Defendant] rationally could have been more concerned about a near-certainty of multiple

decades of banishment from the United States than the possibility of a single decade in prison."). In addition, unrebutted evidence at the postconviction hearing revealed that defendant's serious health problems (which require daily insulin treatment) might make a longer prison sentence, where some medical treatment would likely be available, preferable to earlier deportation to a place where his ability to secure treatment is uncertain. *Cf. DeBartolo*, 790 F.3d at 779-80 (The defendant "might even have preferred a lengthy prison term in the United States to a shorter prison term that would lead more quickly to deportation, because the lengthy prison term would at least keep him in the same country as his family, facilitating frequent visits by family members, which is important to prisoners.").

¶ 42 Finally, the unrebutted evidence established defendant's tight connection to the United States. He has lived here for over forty years, virtually his entire life. Defendant's family, including his children and ailing mother, live here too. He has no apparent ties to Mexico. Therefore, removal from the United States would be "the equivalent of banishment or exile" from his family and long-time

26

home. *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947); *Sandoval*, 249 P.3d at 1022.

¶ 43    With all this in mind, we must decide not "whether a decision to reject a plea of guilty was the best choice, but only whether it [was] a rational one." *Picca*, 947 N.Y.S.2d at 130 (discussing *Padilla* standard). For the reasons discussed above, we conclude that rejecting the guilty plea offer and going to trial would have been a rational decision for defendant here. *Id.* (recognizing that the relevant question is whether taking "a chance, however slim, of being acquitted after trial would have been rational"); *see People v. Chavez-Torres*, 2016 COA 169M, ¶ 32 ("Chavez-Torres alleged in his postconviction motion that rejecting the plea offer would have been rational under the circumstances because his entire immediate family lived in the United States and he had no family in, or connections to, Mexico. These unrebutted allegations sufficiently assert *Strickland* prejudice.").

¶ 44    Although the People rely on *People v. Campos-Corona*, 2013 COA 23, the facts of that case were quite different. There, the district court found that the defendant had desired only to avoid prison time under the plea agreement, not to avoid deportation. *Id.*

at ¶ 15. Because his plea "advanced that goal," the court found that he would not have changed his plea even if he had known he would be deported. *Id.* In contrast, the postconviction court here recognized that securing a chance to stay in this country was important to defendant. And, to the extent a chance to receive a Comcor sentence was also important to him, the guilty plea did not advance that goal either. Contrary to his counsel's advice, his plea subjected him to an immigration detainer that caused Comcor to reject him and resulted in his resentencing to prison.

¶ 45 Because defendant has established a reasonable probability that his plea counsel's deficient performance affected the outcome of the plea process, he must be allowed to withdraw his guilty plea. *See Hill*, 474 U.S. at 59; *Pozo*, 746 P.2d at 529 n.8.

### III.  Conclusion and Remand Directions

¶ 46 We reverse the order denying defendant relief under Crim. P. 35(c), and we remand to the district court with directions to grant defendant's petition. In conjunction with that relief, the court shall vacate defendant's conviction, permit him to withdraw his guilty plea, and reinstate the original charges against him.

JUDGE TAUBMAN concurs.

28

JUDGE GRAHAM dissents.

JUDGE GRAHAM, dissenting.

¶ 47    In my view, the majority opinion has misapplied and expanded the prejudice test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and applied in *Dunlap v. People*, 173 P.3d 1054, 1062-63 (Colo. 2007).  I also disagree that the record before us shows prejudice to defendant as a result of his counsel's warning to him that his guilty plea would create the risk, but not the certainty, of deportation.

¶ 48    I agree that effective counsel "must advise her client regarding the risk of deportation."  *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010).  I also agree that where counsel provides "false assurance that his conviction would not result in his removal from this country," the defendant has been given ineffective assistance.  *Id.* at 368.  That is not what happened here.

¶ 49    Defendant's counsel told him that the prosecutor was intractable in her position that defendant would not be offered a plea that was "immigration safe."  She warned him that there was "a likelihood of deportation, although not a certainty."  The *risk* of deportation was explained to defendant.  *Padilla* made clear that "[t]o satisfy [counsel's] responsibility, we now hold that counsel

30

must inform her client whether his plea carries a risk of deportation." *Id.* at 374. Measured against *Padilla*'s standard, it is not certain that counsel's advice to defendant fell below the wide standard of competence demanded by *Strickland*. But I am willing to assume, as the trial court found, that defendant's counsel gave him erroneous advice by telling him there was a chance he could avoid deportation.

¶ 50 Where I part company with the majority is in the evaluation of prejudice to defendant. The record demonstrates to me that defendant knew the true potential consequences of his plea, not, as the majority supposes, because of his past criminal record, but because his counsel advised him that there was no assurance he would not be deported. And, importantly, he acknowledged in writing that he would be deported if he pleaded guilty to a felony.

¶ 51 Defendant is an admitted heroin dealer who is no stranger to the criminal justice system. He has committed numerous prior criminal acts and has failed to appear in court when charged. Against this background, in August, 2011, a confidential informant advised the Denver Police Department Gang Bureau that defendant was attempting to sell heroin. Surveillance by the police, including

electronic video and audio equipment, observed and heard defendant attempting to sell and selling heroin.  This evidence was detailed in an arrest affidavit and made available to counsel in discovery.

¶ 52      In April, 2012, defendant entered a plea of guilty to a felony distribution charge in exchange for the prosecutor dropping a charge of conspiracy and a charge of distribution.  Those charges carry potential penalties far more severe than the felony distribution charge to which defendant pleaded guilty.  Before the trial court would accept the plea, as part of his Crim. P. 11 advisement, defendant read and executed a petition to enter plea of guilty and plea agreement which represented to the court that defendant could speak, read, and understand the English language, or that all of the documents and proceedings had been fully explained to him in a language he could understand.  He represented that he had consulted with his lawyer and that he recognized the potential penalty for each offense with which he was originally charged carried a maximum penalty of sixteen years.  He also agreed to the factual basis for his charged crimes.  And most importantly, he initialed paragraph 14, which represented that he

understood a plea of guilty would "*result in my being deported, . . .*
excluded from admission to the United States, and my being
refused U.S. citizenship." (Emphasis added.) In presenting that
petition to the district court, defendant did not seek clarification,
notwithstanding the court's inquiry, "Is there anything more that
you want me to know or anything more you want me to
consider . . . ?" Defendant was then sentenced to Community
Corrections.

¶ 53    Soon after that plea, Immigration and Customs Enforcement
placed a hold on defendant which resulted in his disqualification
from Community Corrections. Defendant very quickly retained
immigration counsel, but did not seek to withdraw his plea. *See*
*People v. Pozo*, 746 P.2d 523, 527 (Colo. 1987) (where erroneous
advice is given to an immigrant subject to deportation, he will likely
be able to withdraw his plea).

¶ 54    This factual backdrop leads me to conclude that defendant
cannot show that, but for his counsel's advice, he would not have
known the true consequences of his plea. *People v. DiGuglielmo*, 33
P.3d 1248 (Colo. App. 2001), is instructive. There, the defendant,
who was sentenced to probation, argued that his plea of guilty was

33

not knowing and voluntary because he was led to believe that he would receive a deferred sentence. The division recognized that counsel's promise of a sentence to be imposed might indeed constitute ineffective assistance of counsel. But, where the defendant had received a written Crim. P. 11 advisement form that specifically addressed the sentence, he could not claim misrepresentation as a ground for ineffective assistance. *Id.* at 1251. "At the providency hearing, defendant had an affirmative obligation to request clarification from the court if his understanding of the plea agreement was different from the information contained in the written plea documents and the trial court's colloquy with him." *Id.*

¶ 55    The majority distinguishes *DiGuglielmo* by noting that the trial court specifically addressed the sentence in addition to the written Rule 11 advisement. I am aware of no case that requires a verbal explanation of a written Rule 11 advisement. A written advisement alone is a sufficient basis for requiring a defendant to seek clarification. This is particularly apparent where, like here, counsel advised defendant of the risk. If defendant was laboring under a belief that his length of stay in the United States would be favorably

considered by the immigration authorities, that belief was certainly disabused by the written document he read and signed. And too, like in *DiGuglielmo*, the defendant never alleged "that his counsel's misrepresentation was deliberate." *Id.* at 1252.

¶ 56 The majority claims that *People v. Rael*, 681 P.2d 530 (Colo. App. 1984), was distinguished by *DiGuglielmo* in such a way as to add emphasis to the importance of the court's verbal explanation during the Rule 11 advisement. I can find nothing in *Rael* to support that assumption. *Rael* relied upon the fact that counsel had stated that he "*knew* that the court would not aggravate/increase the maximum sentence." 681 P.2d at 532. There was no need to address the prejudice prong of *Strickland* in *Rael* because the division in *Rael* ordered a hearing on the basis of a deliberate misrepresentation. Here there was no deliberate misrepresentation and any confusion caused by counsel's statements of hope were unquestionably clarified by a written advisement to defendant that his plea *would result in his deportation.* Nor am I persuaded by the conclusion in *People v. Chavez-Torres*, 2016 COA 169M, that the defendant in that case was entitled to a hearing (as was the defendant here) when he

alleged sufficient excusable neglect to warrant a late filing of a postconviction motion by asserting that he had received erroneous immigration advice.

¶ 57     This case bears no resemblance to *Chavez-Torres*. Defendant here received an accurate Rule 11 advisement that he would be deported. Yet he did not seek to clarify that advice. It is unrealistic to conclude that a noncitizen who was concerned enough about his immigration status to question whether his plea would result in deportation but did not seek to clarify a proper Rule 11 advisement telling him that deportation was a certainty has shown the kind of material prejudice sufficient and grave enough to undermine the confidence in his plea. None of the cases cited by the majority stands for the proposition that a proper written advisement acknowledged and signed by a defendant should be disregarded simply because the defendant is a noncitizen. Where a defendant who is fluent in English, as is the case here, tells the judge that he understands the matters set forth in the written Rule 11 advisement that he has personally signed, it makes little sense for the sentencing judge to verbally go over each detail in the advisement. *See People v. Laurson,* 70 P.3d 564, 566 (Colo. App.

2002) ("When a defendant indicates at the providency hearing that he or she understood the matters contained in a written guilty plea advisement form, the burden of proof is on the defendant to show that the apparent waiver was not effective.").

¶ 58    There are further reasons for concluding that defendant has not shown prejudice. The majority reasons that it would have been preferable for defendant to receive a long prison sentence than to be deported. I disagree that any defendant, immigrant or otherwise, would prefer the prospect of two consecutive sixteen-year sentences to a four- or five-year sentence. Defendant was forty-one years of age at the time of his sentencing. His purported preference for potential consecutive sentences of up to thirty-two years at the age of forty-one to the sentence he received (even with deportation) is not credible. It is true that he had medical issues resulting from his abuse of drugs and alcohol. He has sclerosis of the liver. He is diabetic and so he must take insulin. Nothing in the record suggests that he cannot receive medication or treatment for these maladies outside the United States and that it would have been a preferable choice to draw a lengthy prison term just so he could

have the services of a prison doctor. He was certainly coping physically before he decided to sell heroin.

¶ 59    The majority opinion seeks to weigh factors it finds relevant to a showing of prejudice, relying on what it deems to be the persuasive authority of cases in foreign jurisdictions. I am unwilling to rely on that authority. My conclusion is reached recognizing that no Colorado case gives such an expansive treatment of *Strickland*'s prejudice prong.

¶ 60    Defendant has admitted his guilt. The documentary evidence which forms the basis for his arrest warrant shows that a finding of guilt on the original charges is all but assured. His physical conditions are treatable in Mexico and elsewhere; he does not deny otherwise. He is not terminally ill. Admittedly, his ties to this country are strong and he has family members here. One would expect nothing else in the case of a long-term resident. However, I am unaware of any Colorado case that requires an exception to deportation on the basis of close ties to Colorado. He is not a United States citizen and, based upon his felony charge, it is unlikely that he will ever become one, even after remand.

¶ 61    Consequently, I am left to conclude that the district court was correct in deciding, after an evidentiary hearing, that defendant failed to satisfy the prejudice prong of *Strickland*.  I would affirm.