24CA1043 Peo v Johnson 12-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1043
City and County of Denver District Court No. 18CR6425
Honorable Kandace C. Gerdes, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Tahlil Johnson,

Defendant-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE LIPINSKY
Dunn and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

---

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

Tahlil Johnson, Pro Se

¶ 1     Tahlil Johnson appeals the postconviction court's order denying his Crim. P. 35(c) motion without a hearing.  We affirm.

## I.     Background

¶ 2     In August 2018, the Denver Fire Department responded to reports of smoke coming from an apartment.  Firefighters discovered in the apartment a person who had been set on fire and was severely burned.  The victim was pronounced dead less than an hour later.

¶ 3     Law enforcement identified the victim and located his vehicle a few blocks away, where officers spoke with Johnson and his girlfriend, Julisa Granados.  The two of them told the officers that someone named "Guillermo" had been upset with the victim and "may have done something" to him.

¶ 4     During an interview at police headquarters, Johnson and Granados told detectives that they had been staying with the victim at his apartment and had heard a fight between Guillermo and the victim.  They said that they awoke to the smell of smoke the next morning and saw the victim on the floor on fire.

¶ 5     However, during a second interview, Granados admitted that she lied in the first interview.  She said that Johnson became upset

and fought with the victim. According to Granados, Johnson killed the victim by kicking him in the head numerous times. Johnson and Granados then bought cleaning supplies at a Family Dollar store to clean up some of the blood.

¶ 6    Granados said that, after determining he needed to dispose of the victim's body, Johnson walked to a nearby store to purchase lighter fluid. He returned to the apartment and set it on fire while Granados waited outside. Law enforcement obtained surveillance footage from a store showing Johnson buying lighter fluid about thirty minutes before the fire was reported, as well as a video from the Family Dollar store showing Johnson and Granados purchasing cleaning supplies.

¶ 7    Based on this information, the prosecution charged Johnson with two counts of first degree felony murder (with robbery and arson as the predicate crimes), first degree murder – after deliberation, first degree arson, aggravated robbery, aggravated motor vehicle theft in the first degree, and abuse of a corpse. The prosecution twice moved to amend the complaint to add a tampering with a deceased body count, as well as three habitual

criminal counts based on Johnson's previous convictions for identity theft and forgery.

¶ 8 Johnson pleaded guilty to two added counts — second degree murder and a crime of violence sentence enhancer — in exchange for the dismissal of the original counts. The second degree murder count, a class 2 felony, carried a presumptive sentencing range of eight to twenty-four years, *see* §§ 18-1.3-401(1)(a)(V)(A.1), C.R.S 2025; § 18-3-103(1), C.R.S. 2025, while the crime of violence count mandated a sentence "for a term of incarceration of at least the midpoint in, but not more than twice the maximum of, the presumptive range," §§ 18-1.3-406(1)(a), C.R.S. 2025; *see* § 18-1.3-401(8)(a). Although these sentencing statutes subjected Johnson to a prison sentence of sixteen to forty-eight years, he stipulated to a sentence of forty to forty-eight years in his plea agreement. The court sentenced him to forty-eight years in the custody of the Department of Corrections — the maximum in the stipulated range.

¶ 9 Almost three years later, Johnson filed a timely Crim. P. 35(c) motion, asserting that (1) his attorneys had provided ineffective assistance; (2) he was entitled to the ameliorative effect of two 2023

amendments to the Criminal Code; (3) the court abused its discretion by imposing an excessive sentence; and (4) the prosecution engaged in misconduct. In a written order, the postconviction court denied Johnson's motion without a hearing.

## II.    Discussion

¶ 10    Johnson contends that the postconviction court erred by denying his Crim. P. 35(c) motion. We disagree.

### A.    Standard of Review and Applicable Law

¶ 11    We review de novo a postconviction court's denial of a Crim. P. 35(c) motion without a hearing. *People v. Cali*, 2020 CO 20, ¶ 14, 459 P.3d 516, 519.

¶ 12    A court may deny a Crim. P. 35(c) motion without a hearing if the motion, files, and record clearly establish that the allegations in the defendant's motion do not warrant postconviction relief. *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003). This standard is satisfied if (1) the defendant's allegations are bare and conclusory; (2) the allegations, even if true, do not warrant postconviction relief; or (3) the record directly refutes the defendant's claims. *People v. Duran*, 2015 COA 141, ¶ 9, 382 P.3d 1237, 1239.

4

## B.    Ineffective Assistance of Counsel

¶ 13    Johnson asserts that the postconviction court erred by denying four of his ineffective assistance of counsel claims.  We are not persuaded.

¶ 14    To succeed on an ineffective assistance claim, the defendant must establish that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant, meaning there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *People v. Duran*, 2025 COA 34, ¶ 16, 569 P.3d 899, 904.  A postconviction court may reject an ineffective assistance claim if the defendant fails to demonstrate either deficient performance or prejudice.  *People v. Aguilar*, 2012 COA 181, ¶ 9, 317 P.3d 1255, 1257.

¶ 15    First, Johnson contends that the postconviction court erred by denying his claim that the public defender who represented him during the first six months of the case was ineffective because of "significant disparities in budget and experience" between the

public defender's office and that of the district attorney. But Johnson did not allege that his attorney provided ineffective assistance on this basis and, therefore, he has not established the deficient performance prong of his ineffective assistance claim. *See People v. Osorio*, 170 P.3d 796, 800 (Colo. App. 2007) (rejecting the defendant's ineffective assistance claim because "[o]ther than a bare assertion of errors, no detail [wa]s provided to explain why [the challenged] actions were deficient or to place them in context"). Nor did Johnson allege any prejudice resulting from the purported budgeting disparities, particularly as the public defender only represented him during the first six months of the case.

¶ 16    Second, Johnson asserts that the postconviction court erred by denying his claim that the private attorney who represented him after the public defender withdrew was ineffective because the private attorney moved to continue the trial without Johnson's consent. Johnson alleged that his attorney should have instead filed a motion for "Vindictive Prosecutorial Misconduct."

¶ 17    This claim fails because a lawyer does not need the client's consent to file a motion. *See Arko v. People*, 183 P.3d 555, 558 (Colo. 2008) (explaining that, although a lawyer must abide by the

6

client's decisions in some areas, decisions about what motions to file are tactical decisions reserved for the attorney). And Johnson did not explain how the outcome of the case would have been different if his attorney had filed the motion he requested. *See Duran*, ¶¶ 8-9, 382 P.3d at 1239.

¶ 18     Third, Johnson maintains that the postconviction court erroneously denied his claim that the alternate defense counsel who represented him after the private attorney withdrew coerced him into pleading guilty by telling him that he would lose at trial because (1) a jury would be prejudiced against him for "bringing them out during the height of a pandemic" and (2) he would "appear very intimidating" to the jury as a "6'5" black man wearing a mask." Assuming, without deciding, that by referencing these statements Johnson sufficiently alleged deficient performance, Johnson's claim of prejudice is conclusory, and the record refutes it.

¶ 19     To establish prejudice in the context of a guilty plea, a defendant must demonstrate a reasonable probability that, "but for counsel's errors, the defendant 'would not have pleaded guilty and would have insisted on going to trial.'" *People v. Campos-Corona*, 2013 COA 23, ¶ 10, 343 P.3d 983, 985-86 (quoting *People v.*

7

*Stovall*, 2012 COA 7M, ¶ 19, 284 P.3d 151, 155). To do so, the defendant must produce some objective corroborating evidence outside of his self-serving statements, *Carmichael v. People*, 206 P.3d 800, 807 (Colo. 2009), *overruled on other grounds as recognized by People v. Delgado*, 2019 COA 55, ¶ 1, 442 P.3d 1021, 1023, and "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances," *People v. Sifuentes*, 2017 COA 48M, ¶ 20, 410 P.3d 730, 736 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). "In determining whether a decision to reject the guilty plea would have been rational, a court should consider the strength of the prosecution's case, the attractiveness of the plea deal, and the risks of going to trial." *Duran*, ¶ 18, 569 P.3d at 904.

¶ 20    In his motion, Johnson did not allege that alternate defense counsel's actions prejudiced him. Nor did he allege that objective evidence would corroborate his assertion that he would have made a different decision about the plea absent alternate defense counsel's allegedly deficient performance. *See Sifuentes*, ¶ 20, 410 P.3d at 736. Further, Johnson made no allegation that the prosecution's case was weak or flawed, nor did he identify a

8

meritorious defense to the charges against him. *See id.* at ¶ 21, 410 P.3d at 736. And Johnson did not address in the motion the benefits of the plea agreement compared to the risks he would have faced had he gone to trial. *See id.*; *Carmichael*, 206 P.3d at 806. Lastly, he does not seek to withdraw his plea, which refutes his assertion that he wished to proceed to trial.

¶ 21    In any event, the record refutes Johnson's claim by demonstrating the strength of the case against him. *See Duran*, ¶ 22, 569 P.3d at 905 (noting that the evidence — including surveillance video, eyewitnesses, and results of a blood test — was "exceptionally strong"). Granados, an eyewitness to the crimes, would have testified that Johnson kicked the victim to death and set the victim's body on fire. In addition, video evidence corroborated Grandos's testimony, including surveillance videos showing Johnson purchasing lighter fluid and Johnson and Granados buying cleaning products. If convicted, Johnson faced the risk of a life sentence without parole. A forty-eight-year prison sentence was less harsh than life behind bars. *See People v. Corson*, 2016 CO 33, ¶ 42, 379 P.3d 288, 297 (noting that "the plea agreement provided substantial benefits" to the defendant (i.e., a

stipulated probation sentence), and in contrast, if the defendant went to trial he faced a mandatory prison sentence).  Under these circumstances, it would not have been rational for Johnson to reject the plea agreement and insist on going to trial.

¶ 22     Finally, Johnson argues that the postconviction court erred by denying his claim that alternate defense counsel did not tell him about the consequences of pleading guilty to the crime of violence sentence enhancer.  Specifically, he alleged in his motion that alternate defense counsel did not advise him that pleading to the crime of violence count would result in a lengthy sentence.  The record refutes Johnson's argument, however, because (1) the possible sentence with the crime of violence enhancer was clearly spelled out in Johnson's plea documentation; (2) Johnson expressly agreed to a potential sentence of forty to forty-eight years; and (3) after the district court explained the possible penalties to Johnson, the court found that he understood "the possible penalties and the possible places of incarceration and the period of mandatory parole."  *See People v. Boling*, 261 P.3d 503, 505 (Colo. App. 2011) ("To the extent defendant claims his plea was entered upon the improper advice of counsel, that assertion is belied by the

plea documents and transcript of the providency hearing in which he expressed complete satisfaction with counsel's representation"). In any event, even if alternate defense counsel performed deficiently, Johnson still did not sufficiently allege prejudice, as explained above, *see Duran*, ¶ 20, 569 P.3d at 905-06, and the court said that alternate defense counsel was effective and competent. We therefore reject Johnson's assertion that alternate defense counsel's performance was deficient.

## C. Challenges to the Sentence

¶ 23 Johnson also asserts that the postconviction court erred by denying three arguments related to his sentence. We are not persuaded.

¶ 24 First, Johnson alleged in his motion that he was entitled to the ameliorative effect of House Bill 23-1293, which, according to Johnson, reclassified his previous felonies as misdemeanors. Johnson argued that because his prior convictions are no longer felonies he is "not a habitual criminal." Even assuming the truth of this allegation, however, we reject Johnson's assertion because although he was charged with habitual criminal counts he did not

plead guilty to them and the court did not sentence him under the habitual criminal statute.

¶ 25 Second, Johnson alleged that the district court abused its discretion by imposing an excessive sentence. We disagree because (1) the district court imposed a sentence within the presumptive range and (2) Johnson stipulated to a sentence of up to forty-eight years. *See People v. Palmer*, 888 P.2d 348, 352 (Colo. App. 1994) (explaining that appellate courts defer to a court's sentencing decision when the sentence is with the presumptive range and is based on appropriate considerations). And, to the extent that Johnson's claim can be construed as a request for a sentence reconsideration under Crim. P. 35(b), it is untimely. *See People v. Fuqua*, 764 P.2d 56, 59 (Colo. 1988) (holding that if a defendant fails to file a motion within the time limit in Crim. P. 35(b), the court loses jurisdiction to reduce the sentence and must deny the motion).

¶ 26 Third, Johnson alleged that his sentence "exceeded the maximum authorized by law" because "[c]ount 13 was blank." The postconviction court found "there was a clerical error that was corrected to reflect that the crime of violence enhancer imposes a

five year mandatory period of parole." The court therefore determined that Johnson had not raised a "viable claim for post-conviction relief." Because we agree with the postconviction court, we reject Johnson's appellate contention.

### D. Abandoned Claims

¶ 27 Johnson raised several other claims in his postconviction motion that he does not reassert on appeal. We therefore consider those claims abandoned and do not address them. *See Osorio*, 170 P.3d at 801.

### E. New Claims

¶ 28 Finally, we decline to address arguments that Johnson did not raise in his postconviction motion — the arguments he raised in his opening brief under the heading, "Mental Health Considerations." *See People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review."). And we do not review arguments presented for the first time in a reply brief. *People v. Medina*, 72 P.3d 405, 409 (Colo. App. 2003).

### III. Disposition

¶ 29    The order is affirmed.

JUDGE DUNN and JUDGE KUHN concur.